UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANITA W.,<br>    Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>    Defendant. | Case No. 2:17-cv-08338-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff filed a complaint seeking review of the denial by Defendant Acting Commissioner of Social Security Administration ("Commissioner") of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing disputed issues in the case [Dkt. 16 ("Pltf.'s Br."), Dkt. 17 ("Def.'s Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that the Commissioner's decision should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On October 24, 2014, Plaintiff filed an application for DIB and on October 29, 2014, she filed an application for SSI, both alleging that she became disabled as of December 31, 2007. [Dkt. 15, Administrative Record ("AR") 20, 144-47, 148-54.] The Commissioner denied her initial claim for benefits on January 7, 2015. [AR 20, 78-79, 81-92.] On October 17, 2016, a hearing was held before Administrative Law Judge ("ALJ") Alexander Weir III. [AR 43-62.] On December 13, 2016, the ALJ issued a decision denying Plaintiff's claim for benefits. [AR 17-35.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).[1] At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of December 31, 2007, and that her date last insured was December 31, 2012. [AR 23 (citing 20 C.F.R. §§ 404.1571, 416.971).] At step two, the ALJ found that Plaintiff suffered from the severe impairment of bipolar disorder. [AR 24 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).]

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to the performing [of] detailed and complex tasks occasionally. She has no other limitations.

[AR 26.] Applying this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but determined that based on her age (42 years old at the alleged disability onset date), high school education, and ability to communicate in English, she could perform representative occupations such as bagger (DOT 920.687-014), hand packager (DOT 920.587-018), and cleaner, hospital (DOT 323.687-010), and, thus, is not disabled. [AR 30-31 (citing 20 CFR §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).]

The Appeals Council denied review on October 18, 2017. [AR 1-7.] This action followed.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), this Court reverses only if the Commissioner's "decision was not supported by substantial evidence in the record as a whole or if the [Commissioner] applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Even if Plaintiff shows the Commissioner committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina,* 674 F.3d at 1111 (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). And "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011).

Courts have "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006). In sum, "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (quoting *Stout*, 454 F.3d at 1055-56). Ultimately, "[t]he nature of [the] application [of the harmless error doctrine] is fact-intensive—'no presumptions operate' and '[the Court] must analyze harmlessness in light of the circumstances of the case.'" *Id.* (quoting *Molina,* 674 F.3d at 1121).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject the opinion of Plaintiff's treating physician, Dr. Belinda Hara, M.D., rendered on March 17, 2015 in a form titled "Medical Opinion Ability to Do Work Related Activities [Mental]" ("2015 Opinion"). [Pltf.'s Br. at 4; AR 691-92 (brackets in original).] The Commissioner contends that the ALJ properly evaluated Dr. Hara's opinion. [Def.'s Br. at 3-4.]

### A. Dr. Hara's Opinion

Dr. Hara was Plaintiff's designated psychiatrist at Los Angeles County Department of Mental Health-Augustus Hawkins ("Augustus Hawkins"). [Pltf.'s Br. at 6; AR 351.] Plaintiff's treatment at Augustus Hawkins started September 21, 2011. [Pltf.'s Br. at 6; AR 267.] The record reflects Dr. Hara met with Plaintiff on at least 17 occasions, the earliest record of which was a scheduled appointment on November 19, 2013. [AR 357, 408, 423, 439, 456, 469, 473, 486, 502, 517, 525, 537, 544, 544, 548, 559, 577, 589, 701-06 .] Plaintiff also testified at the hearing

that she meets with Dr. Hara once every two months, though she did not specify the date on which Dr. Hara first treated Plaintiff. [AR 49-50.] On March 17, 2015, Dr. Hara completed the 2015 Opinion, a checkbox form, in which she indicated that for unskilled work, Plaintiff was "Limited But Satisfactory" in four areas and "Seriously Limited But Not Precluded" in twelve areas, and that for semi-skilled or skilled work. Plaintiff was "Limited But Satisfactory" in two areas, "Seriously Limited But Not Precluded" in four areas, and "Unable to Meet Competitive Standards" in three areas. [AR 692.] Dr. Hara also noted that Plaintiff's medications caused daytime drowsiness, fatigue, and slowed thinking, and that Plaintiff's limitations have lasted for one year or more. [*Id.*]

The ALJ gave three reasons for giving Dr. Hara's 2015 Opinion little weight: 1) "the limitation noting the Petitioner was 'seriously limited but not precluded' is vague," 2) "the limitations are overly restrictive and inconsistent with Plaintiff's admitted activities of daily living," serving as a caregiver for her disabled son and "helping him with his day-to-day necessities," and 3) that the "treatment records documented minimal positive findings on the mental status examinations." [AR 29 (citing AR 408, 423, 439, 456, 469, 702-03.] The ALJ gave partial weight to the opinion of a non-examining state agency mental consultant who opined that Plaintiff's mental impairment was severe and that Plaintiff was moderately limited in understanding and remembering detailed instruction and in carrying out detailed instruction. [AR 29, 63-71.]

**B.    Analysis**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine, but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 404.1527; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinion of a treating or

examining physician is entitled to greater weight than that of a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). To reject the uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even where a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

The Ninth Circuit has long held that "the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)) (alteration in original); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)) (emphasis and citations omitted)). However, a conclusory opinion that is "based on significant experience" with a claimant and is "supported by numerous records," it is entitled to greater weight than that given to an otherwise unsupported and unexplained check-box form. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

As a preliminary matter, while there is some evidence in the record that Dr. Hara's opinion was contradicted in part by the state agency consultant, the ALJ did not expressly find that Dr. Hara's opinion was contradicted by another doctor. [*See* AR 29.] The Court can only rely on the ALJ's stated bases for rejecting an opinion and therefore applies the clear and convincing standard. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017). However, as discussed below, even if the

Court were to apply the specific and legitimate standard, the ALJ's reasons for affording the 2015 Opinion "little weight" would fail.

### 1. The ALJ Failed to Consider the Length of Treatment Relationship, Nature and Extent of Treatment Relationship, and Supportability of the 2015 Opinion.

The ALJ first failed to consider the appropriate factors when he refused to give controlling weight to the treating physician's uncontradicted opinion. Though the ALJ found the 2015 Opinion was vague, overly restrictive and contradicted by Plaintiff's daily activities, and not supported by treatment records, the ALJ failed to account for the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, or supportability of the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *see Trevizo*, 871 F.3d at 676 (finding ALJ's failure to address length of treating relationship, frequency of examination, nature and extent of treatment relationship, or supportability of opinion was reversible legal error).

The record reflects that Dr. Hara treated Plaintiff on at least 17 specific occasions, 6 of which occurred prior to issuing the 2015 Opinion, and had been treating plaintiff since at least 2013, though the record is unclear exactly when Dr. Hara began treating Plaintiff. [AR 49-50 (Plaintiff's testimony that she saw Dr. Hara once every two months), 351 (describing Dr. Hara as Plaintiff's designated psychiatrist on December 10, 2013), 408, 423, 439, 456, 469, 473, 786, 502, 517, 525, 537 (noting future appointment with Dr. Hara on November 19, 2013), 544, 548, 559, 577, 589, 701-06.] The ALJ failed to consider this treatment relationship in any way. [*See* AR 29.] Though the ALJ found the opinion "not supported by treatment records," the ALJ only cited to treatment records from the period *after* the 2015 Opinion, which Dr. Hara could not have relied on to support her opinion at the time it was written. [AR 29 (citing records from October 1, 2015, November 29, 2015, December 28, 2015, March 1, 2016, May 3, 2016, and July 6, 2016.] Thus, to

7

the extent this justification supports the ALJ's decision, it only shows that the ALJ considered whether the 2015 Opinion is consistent with the record as a whole, not whether the treatment records and blood test results presented in Dr. Hara's medical records supported the 2105 Opinion. *Compare* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."), *with* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

### 2. The ALJ Failed to Present "Clear and Convincing" or "Specific and Legitimate" Reasons for Giving "Little Weight" to the 2015 Opinion

The reasons the ALJ did present to reject the 2015 Opinion were not specific and legitimate. The ALJ's first reason for rejecting the 2015 Opinion – that "the limitation noting the Petitioner was 'seriously limited but not precluded' is vague" [AR 20] – is not a specific and legitimate reason for rejecting the opinion. Plaintiff argues that the ALJ should be estopped from rejecting the phrase "seriously limited but not precluded" because it is the same language used by the Social Security Administration in their own forms, or alternatively, because the ALJ was required to more fully develop the record upon determining that the evidence was ambiguous. [Pltf.'s Br. at 9.] The Court agrees that to the extent the ALJ found Dr. Hara's opinion "vague," the ALJ should have developed the record further to resolve any ambiguity, rather than simply refusing to afford the treating physician's opinion more than little weight. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (holding that the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence") (citing *Tonapeytan v.*

*Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). Further, this basis for rejecting Dr. Hara's Opinion also failed to account for the three areas in which Dr. Hara marked Plaintiff as "Unable to Meet Competitive Standards," which included understanding, remembering, and carrying out detailed instructions in semi-skilled jobs. [AR 29, 691.]

The Commissioner's argument in support of the ALJ's first reason rests on a mischaracterization of the ALJ's basis for rejection. The Commissioner states, "[t]he ALJ found that simply checking boxes indicating Plaintiff as seriously limited, without explanation, made these findings vague, or in other words, conclusory." [Pltf.'s Br. at 3.] While the Commissioner is correct that Dr. Hara's opinion was a checkbox form and without explanation, the ALJ did not mention either of these as reasons for rejecting the 2015 Opinion, and so the Court cannot consider them. [AR 29, 691-92]; *Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

Further, even if the ALJ had rejected Dr. Hara's opinion on this basis, he still would have failed to address the long-term treatment relationship or the treatment records pertaining to Dr. Hara's opinion, as is required by *Garrison*. 759 F.3d at1013 (finding conclusory opinion "based on significant experience" with Plaintiff and "supported by numerous records" was entitled to greater weight than that given to an otherwise unsupported and unexplained check-box form); *see also Trevizo*, 871 F.3d at 677 n.4 (finding "ALJ was not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers.") (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Thus, to the extent the ALJ may have discounted Dr. Hara's opinion because it was in a check-the-box form, he still needed to provide specific and legitimate reasons to do so.

9

The ALJ's second reason for rejecting Dr. Hara's opinion was that it was "overly restrictive and inconsistent with the claimant's admitted activities of daily living," including Plaintiff's activities as a caregiver for her disabled son and being responsible for his day-to-day activities. [AR 29.] The ALJ's determination that Dr. Hara's opinion was "overly restrictive," without more, is not specific enough to constitute a valid reason for rejecting his opinion. *See*, *e.g.*, *Jamieson v. Astrue*, 341 Fed. App'x 283, 285 (9th Cir. 2009) ("The ALJ's statement that Dr. Cunnington's opinion was not supported by the record and was 'too extreme' was an insufficient reason for discrediting Dr. Cunnington and instead relying on Dr. Torre.").

The ALJ's statement that the 2015 Opinion was inconsistent with the claimant's daily activities failed to identify which aspects of these two activities were inconsistent with Dr. Hara's opinion. *See Jones v. Astrue*, 503 F. App'x 516, 517 (9th Cir. 2012) (finding error where an ALJ rejected a treating physician's report on the ground that "it is unsupported by objective findings and is inconsistent with the claimant's own reports of her activities," because it was not clear what specifically made the record insufficient to support the opinion).

Plaintiff "admitted" at the hearing and completed a function report stating that she served as her disabled son's caregiver and that this included helping him bathe, cooking for him, and helping with his day-to-day necessities. [AR 26, 49, 172.] Plaintiff, however, also stated she needed help from her daughter to carry out these responsibilities and some days she was unable to care for her son. [AR 26-27, 49, 172.] Plaintiff's daughter confirmed Plaintiff's child care responsibilities include getting her son up in the morning and ready for school. [AR 27, 164.] The ALJ described Plaintiff's activities as "going out alone, using public transportation, shopping, doing household chores, and preparing meals." [AR 27.]

However, these activities are not necessarily inconsistent with Dr. Hara's opinion [AR 691] that plaintiff is, for example, seriously limited but not precluded from maintaining attention for a 2-hour segment, completing a normal workday and

workweek without interruptions from psychologically based symptoms, or dealing with normal work stress. *Cf. Garrison*, 759 F.3d at 1017 (emphasizing that reports of improvement in the context of mental health issues must be "interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace"). Accordingly, the ALJ's finding that plaintiff's daily activities conflicted with the 2015 Opinion was neither adequately explained nor supported by substantial evidence in the record and, therefore, was not a specific and legitimate reason for discounting Dr. Hara's opinion.

The ALJ's final reason for giving limited weight to Dr. Hara's opinion was that "treatment records documented minimal positive findings on the mental status examinations." [AR 29.] The ALJ cited to 6 of the 17 occasions in which Dr. Hara treated Plaintiff to support this determination. [AR 29 (citing AR 408, 423, 439, 456, 469, 702-03).] In each report, Dr. Hara described Plaintiff's mental status, with some slight variations, as the following: casually dressed; fair hygiene/grooming; calm/cooperative; good eye contact; gait normal: no gross abnormal motor movements noted; speech- fluent; thought process linear: mood "good," "so-so," or "okay", euthymic mood; affect- appropriate or restricted, reactive; denies [suicidal ideation/homicidal ideation]; denies [auditory visual hallucinations]; no delusions/paranoia elicited; adequate impulse control; fair insight/judgment; cognition grossly intact; [alert and oriented] x 3." [*See* AR 408, 423, 439, 456, 469, 702-03.]

Merely citing to these records without providing any discussion of how the mental status evaluations relate to Plaintiff's ability to work is insufficient to justify giving Dr. Hara's opinion little weight. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (9th Cir. 2001) ("[T]he Commissioner erroneously relied too heavily on indications in the medical record that [the Plaintiff] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to

work or to her work-related functional capacity."). Other evidence in the record shows different mental status results, including describing Plaintiff's mood as "depressed," her affect as "restrictive, reactive," and that Plaintiff "smiles a lot" and "appears nervous when have to explain something." [AR 544, 589.] Further, Dr. Hara wrote in assessment notes that Plaintiff "had episodes of mood swings-hypomania and depression for the past month in spite of adequate Depakote and Abilify doses," before prescribing Plaintiff Lithium. [AR 544.] Medical records other than Dr. Hara's also show more varied results, for example describing Plaintiff as "emotional" during treatment, and present a context for Plaintiff's improvement, such as setting a goal of decreasing mood swings from two times a week to once a month. [AR 438, 588.] The Ninth Circuit has cautioned that with regard to mental health issues, it is an error to reject a treating physician's opinion without considering the context of the overall diagnostic picture. *See*, *e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[A treating physician's] statements must be read in context of the overall diagnostic picture he draws."). Thus, the final reason the ALJ gave for giving little weight to Dr. Hara's opinion was not specific and legitimate and was not supported by substantial evidence.

In sum, because the ALJ failed to assess the necessary factors and to give specific and legitimate reasons for rejecting Dr. Hara's opinion, legal error occurred.

### C. Harmless Error

The ALJ's legal error in failing to assess the necessary factors and to give specific and legitimate reasons for rejecting Dr. Hara's opinion is particularly concerning in this case, because the ALJ seems to have completely substituted the only two medical opinions in the record with his own opinion without giving even specific and legitimate reasons for doing so. Dr. Hara had at least a three-year treatment relationship with Plaintiff and is the only physician in the record who assessed Plaintiff's psychological functioning in person. Further, the ALJ only gave partial weight to the only other medical opinion in the record and ultimately rejected

even the restriction to simple work-related tasks presented in that opinion. [AR 29, 69.]

The record reflects the ALJ presented a hypothetical to the Vocational Expert for a person limited to medium work and precluded from performing detailed tasks and the Vocational Expert responded that such a person could perform the same jobs as a person with Plaintiff's current RFC, a limitation of medium work and only occasional detailed tasks. [AR 60-61.] However, even the stricter RFC hypothetical the ALJ presented to the Vocational Expert does not encompass all of the restrictions Dr. Hara identified in her 2015 Opinion. Therefore, the Court cannot conclude that the ALJ's error was harmless, and reversal and remand are appropriate.

### V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: January 24, 2018

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

13